IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TIFFANY SUSAN BERRY,

        Plaintiff,

v.                                                                          Case No. 17-1006-JTM

NANCY A. BERRYHILL,
*Acting Commissioner of Social Security*,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Tiffany Berry protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Her claims were denied by the Social Security Administration. She then requested and received an evidentiary hearing before an Administrative Law Judge (ALJ). Plaintiff testified at the hearing on November 5, 2014, before ALJ Susan W. Conyers in Wichita, Kansas. Vocational expert Cynthia A. Younger also testified. The ALJ issued a written opinion on June 17, 2015, finding plaintiff was not disabled within the meaning of the Act because she retained the capacity to perform several sedentary jobs. Plaintiff appeals, arguing the ALJ committed a number of errors, including by erroneously finding that plaintiff's mental impairments did not meet a listed impairment, by determining a residual functional capacity (RFC) that was not supported by substantial evidence, and by erroneously assessing medical opinions. For the reasons that follow, the court concludes the decision of the Commissioner should be affirmed.

**I. Legal Standard**

Under the Act, the court must accept the factual findings of the Commissioner if they are supported by substantial evidence. 42 U.S.C. § 405(g). The court accordingly looks to whether the factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, No. 09-1163-JTM, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if she suffers from a physical or mental impairment which stops her "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation is unnecessary. *Barkley*, 2010 WL 3001753, at *2. The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal a designated impairment, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. Upon determining the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require a determination of whether the claimant can either perform his past relevant work or can perform other work that exists in the national economy. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751).

The claimant bears the burden at steps one through four to prove a disability that prevents performance of her past relevant work. *Lax*, 489 F.3d at 1084. The burden then

shifts to the Commissioner at step five to show that, despite the impairments, the claimant can perform other work in the national economy. *Id. See Weir v. Colvin*, No. 15-1300-JTM, 2016 WL 6164313, at *1–2 (D. Kan. Oct. 24, 2016). *See Johnston v. Berryhill*, No. 16-2342-JTM, 2017 WL 1738037, at *1–2 (D. Kan. May 4, 2017).

**II. Discussion**

A. *Summary of ALJ ruling*. Plaintiff was born in 1972, making her 40 years old as of June 6, 2012, the alleged onset date. The ALJ found that plaintiff was insured under the Act through March 31, 2013. At the first step of the sequential process, the ALJ found that although plaintiff had performed some work after the alleged onset date, it did not rise to the level of substantial gainful activity. At step two, the ALJ found plaintiff suffered from the following severe impairments: bilateral knee osteoarthritis; obesity; delusional disorder and schizophrenia, paranoid type; anxiety disorder; mood disorder and schizoaffective disorder. At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal any of the impairments listed in the regulations.

The ALJ next determined plaintiff's RFC, finding plaintiff could perform sedentary work as defined in the regulations, except she can rarely climb ramps and stairs (no more than one sixth of the workday); should avoid climbing ladders, ropes, and scaffolds; could occasionally balance and stoop but should avoid kneeling, crouching, and crawling; avoid concentrated exposure to vibration or even a moderate exposure to hazards including unprotected height and hazardous machinery; unable to traverse an upward incline; she will occasionally require the use of a cane; she can

4

perform simple and some intermediate tasks not requiring complex or detailed independent planning or goal setting and involving no more than occasional, superficial interaction with the general public, coworkers, and supervisors; and she would do better working with things and data than with people.

At step four of the sequential process, the ALJ determined plaintiff was unable to perform any of her past relevant work. Finally, at step five, the ALJ relied on the testimony of the vocational expert to find plaintiff could perform jobs that exist in significant numbers in the national economy, including bonder of electronic components, document preparer, and patcher (or wire wrapper). The ALJ thus determined that plaintiff was not disabled within the meaning of the Act.

B. *Whether plaintiff meets mental impairment listings*. Plaintiff contends the ALJ erroneously found plaintiff's mental impairments did not meet or exceed the impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, specifically § 12.03 (schizophrenia and psychotic disorders), § 12.04 (depressive and bipolar disorders), and § 12.06 (anxiety and obsessive-compulsive disorders). Plaintiff argues the findings of psychologist T.A. Moeller, Ph.D., show that plaintiff had marked restrictions in social functioning and in maintaining concentration, persistence, and pace. (*See* Dkt. 14 at 6-7). She further argues that the ALJ erred in rejecting Dr. Moeller's opinions on these issues.

Each of the above listings has three parts. The first part, "paragraph A," describes clinical findings that must be present to show a particular mental disorder. In addition to the paragraph A requirements, a claimant must satisfy the criteria in either "paragraph B" or "paragraph C" of the listing. The paragraph B requirements, which

concern functional limitations, provide that the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

The ALJ found plaintiff had moderate difficulties in social functioning. (Dkt. 9 at 62). In concluding that the limitation was moderate, the ALJ specifically cited plaintiff's denial that she currently suffered from paranoia, evidence that plaintiff has a neighbor who assists her by taking care of her cat, progress notes showing plaintiff has friends, and evidence that plaintiff interacts with family. (*Id*.). These factors all clearly tend to support the ALJ's finding. The ALJ also found that plaintiff had moderate difficulties with concentration, persistence, and pace. In support of that finding, the ALJ cited the fact that plaintiff completed a Bachelor's degree in Sociology at the University of Kansas during the period of alleged disability, she maintains a single person household, and she is able to perform household chores, drive, ride the bus, shop, and take care of her personal finances. She additionally plays video games, does puzzles, or uses the computer six hours a day. (*Id*.). Again, these facts tend to support the ALJ's finding. Moreover, the Commissioner cites additional support for the findings, such as evidence that plaintiff was "organized" and demonstrated fair concentration and average

6

intellectual ability. (*See* Dkt. 15 at 7). Again, these factors tend to support the ALJ's findings and, considered as a whole, constitute substantial evidence.[1]

C. *Whether the ALJ erred in determining plaintiff's RFC*. Plaintiff argues the ALJ erred in determining the RFC by making findings that were unsupported or contradicted by the record. First, plaintiff contends the ALJ erred in citing progress notes stating that plaintiff's strengths included "playing soccer." Plaintiff points out that the underlying document upon which the note was based actually stated that her strengths included "playing socceror" [sic] (Dkt. 9-1 at 221). Plaintiff's counsel suggests this might have been a misspelling of "sorcerer" and may have referred to the playing of a video game, noting plaintiff was obese and arguing it is unlikely that she played soccer. Even assuming that to be true, however, it does not undermine the RFC. Nothing in the opinion suggests the RFC would have been altered in any respect had the ALJ found that plaintiff played sorcerer rather than soccer. The ALJ noted that plaintiff plays video games (Dkt. 9 at 62). She also found plaintiff could perform work at the sedentary level with certain limitations, citing among other things the fact she was able to exercise by walking, rowing, and swimming, and that she no longer used a cane. (Dkt. 9 at 65). Under the circumstances, the "playing soccer" reference was harmless even assuming it was a misstatement. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (error was harmless because there was no inconsistency between RFC and physician's findings).

---

[1] Although Dr. Moeller offered an opinion that plaintiff had marked difficulties in these areas, the ALJ only gave some weight to that opinion. For reasons discussed *infra* with respect to Dr. Moeller's opinions, the court concludes the ALJ did not err in doing so.

Plaintiff next argues the ALJ erred by considering plaintiff's self-reported lack of current hallucinations or paranoia, because plaintiff could not be a reliable reporter of such symptoms and because doing so ignored instances when plaintiff's symptoms were documented. In so arguing, plaintiff does not dispute the accuracy of the ALJ's observation or claim that it had no support in the record. And contrary to plaintiff's suggestion, the ALJ did not deny or ignore plaintiff's documented history of symptoms, but rather that found her impairments, severe though they were, did not preclude all work. As the Commissioner points out, records show that on multiple occasions, providers indicated that plaintiff displayed organized thoughts and appropriate thought content, and the ALJ cited evidence supporting a conclusion that plaintiff had various functional abilities notwithstanding her impairments. The ALJ's mention and consideration of the fact that plaintiff reported no current symptoms was not error.

Plaintiff also challenges the ALJ's reliance on plaintiff's ability to obtain a college degree. She argues the ALJ failed to consider that she was granted special accommodations at school. But the ALJ acknowledged and considered that plaintiff had assistance from the disability office, that she was given additional time to complete her assignments and tests, and that she was able to take her tests in a quiet room. (Dkt. 9 at 66). Plaintiff also argues the ALJ essentially made a medical judgment by finding that the ability to obtain a college degree indicated plaintiff was not disabled. The ALJ considered evidence of plaintiff's ability to function at school along with all of the other evidence, including various medical opinions, and resolved the conflicts in the evidence. The ALJ was obligated to determine the RFC from all of the evidence and her

8

consideration of plaintiff's ability to obtain a college degree was a relevant and permissible consideration in that determination. *See e.g., Thomas v. Colvin*, No. 14-105, 2016 WL 1070826, *4 (E.D. Va. Mar. 16, 2016) (fact that plaintiff obtained a college degree considered in determining RFC).

Plaintiff next challenges the ALJ's consideration of plaintiff's ability to live independently and her work performance after the alleged disability onset date as factors weighing against a finding of disability. Nothing in the ALJ's consideration of these factors, however, amounts to error. The ability to live independently is clearly a proper consideration in determining a plaintiff's functional abilities. *See e.g., Cainglit v. Barnhart*, 85 F.App'x 71, 74, 2003 WL 22963117 (10th Cir. 2003) (listing ability to live independently as factor supporting ALJ determination of plaintiff's work-related abilities). That is true regardless of whether plaintiff may have received some services or financial help from a mental health association. Similarly, plaintiff's limited work performance after the alleged onset date was not only relevant, but was a highly relevant indicator of her ability to work. For example, she was able to complete a two-month internship at a Veterans Hospital and a one-month stint at tax firm CCH before being subjected to a lay-off. The ability to perform these jobs, even though for a limited time, was properly considered by the ALJ as weighing against a finding of disability.

Plaintiff also contends the ALJ erred in finding the RFC to be supported "by the State agency reviewing physician" (Dkt. 9 at 68), because that physician's opinion only concerned plaintiff's physical capabilities, not her mental capabilities. The court agrees with the Commissioner, however, that plaintiff over-reads this reference. The ALJ's

9

opinion makes clear she gave the opinion of the state agency physician great weight in determining plaintiff's physical capabilities. *See* Dkt. 9 at 65 ("A State agency reviewing physician … opined that the claimant could perform sedentary work with postural limitations (Exhibits B8A and B9A). The Administrative Law Judge assigned great weight to this opinion. The [ALJ] notes that the claimant is able to exercise by walking, rowing, and swimming."). After addressing that aspect of the RFC, the ALJ turned to the evidence concerning plaintiff's mental capabilities and addressed the two medical opinions in detail, explaining why she gave only "some weight" to those opinions. (Dkt. 9 at 9-12).

Plaintiff challenges the ALJ's assessment of the medical opinions concerning plaintiff's mental impairments. She first argues the ALJ erroneously rejected the opinions of L'Oreal Benitez, LMFT, LAC, on the grounds she was not an acceptable medical source. Although the ALJ (correctly) pointed out that Benitez was not an acceptable medical source, she nevertheless considered and weighed Benitez's opinions and ultimately gave them "some weight" in determining the severity of plaintiff's symptoms. (Dkt. 9 at 66). In reaching that conclusion, the ALJ considered appropriate factors, including the inconsistency of the opinions with the record as a whole, and properly explained her reasons. Plaintiff similarly argues the ALJ improperly rejected the opinions of Dr. Moeller. Again, the ALJ considered Dr. Moeller's opinions and ultimately gave them "some weight." (*Id.*). She did not give the opinions controlling weight as to the severity of plaintiff's mental impairments. The ALJ explained that she found inconsistencies in Dr. Moeller's opinion that plaintiff had marked limitations in

concentration, persistence, and pace, when Moeller found at the same time she had the ability to carry out simple and intermediate level instructions, and perform basic record keeping as shown by her ability to complete a four-year degree and manage her funds independently. (*Id*.). Moeller also opined plaintiff could not work full-time or maintain social interactions, while at the same time acknowledging she had completed an internship with the VA. The ALJ also cited findings in Moeller's review, including notes indicating plaintiff had achieved her Bachelor degree in six to eight semesters, had lived in a regular dorm room with another student, and was oriented and appeared to be functioning in the average range of intelligence. Although Moeller found her insight was impaired, he felt her judgment for making simple decisions for herself was adequate. It was the responsibility of the ALJ to resolve these conflicting points and to do so by considering all of the evidence. The record shows the ALJ did so, including by considering evidence of plaintiff's successful completion of a four-year college degree during the period of alleged disability and her performance as an intern or employee in short-term work situations. (The ALJ summarized factors from Dr. Moeller's report that supported her conclusion. (Dkt. 9 at 66)). The ALJ also properly considered plaintiff's relatively low (45) Global Assessment Functioning (GAF) scores and considered them in her determination, but correctly noted that such scores by themselves were not dispositive. The ALJ expressly found more persuasive other factors such as plaintiff's mental status examination and documented instances of plaintiff's functional capacity. (*Id*. at 67). The ALJ's ultimate determination that plaintiff had moderate rather than marked limitations in areas such as concentration, persistence, and pace, was arrived at

by considering appropriate factors and was supported by substantial evidence, even if there was evidence in the record that could support a stricter limitation.

D. *Whether the ALJ erred in finding plaintiff could perform certain jobs*. The ALJ included a limitation in the RFC to "simple and some intermediate tasks not requiring complex or detailed independent planning." Plaintiff argues this limit is inconsistent with the jobs of bonder and patcher, which require Level 2 Reasoning, and with the job of document preparer, which requires Level 3 Reasoning.

Level 2 Reasoning requires application of commonsense understanding to carry out detailed but uninvolved written or oral instructions, and dealing with problems involving a few concrete variables in or from standardized situations. Level 3 Reasoning requires application of commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and dealing with problems involving several concrete variables in or from standardized situations. *See Dictionary of Occupational Titles (DICOT)* (4th ed. 1991), 726.685-066 (Bonder, Semiconductor), 1991 WL 679631, and 249.587-018, 1991 WL 672349 (Document preparer, Microfilming).

At the evidentiary hearing, a vocational expert testified that an individual with plaintiff's limitations, including an ability to "perform simple, and some intermediate tasks not requiring complex or detailed independent planning or goal setting," could perform all three of the foregoing occupations. The expert further stated that the testimony was consistent with the DOT. (Dkt. 9 at 133-34). Plaintiff argues based on *Paulek v. Colvin*, 662 F.App'x 588, 2016 WL 5723860 (10th Cir. 2016) that a job requiring

Level 2 or Level 3 reasoning is inconsistent with the foregoing limitation. The court disagrees. In *Paulek*, the court found a job requiring Level 3 reasoning was inconsistent with a limitation to understanding, remembering, and carrying out simple instructions. *Paulek*, 662 F.App'x at 594 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (a limitation to "simple and routine work tasks … seems inconsistent with the demands of level-three reasoning."). The instant case is distinguishable, however, as plaintiff's limitation as found by the ALJ was to "perform simple, *and some intermediate tasks* not requiring complex or detailed *independent planning*." Plaintiff cites no Tenth Circuit authority showing that such a limitation is inconsistent with a job requiring Level 3 reasoning. Nor is there any inconsistency between this limitation and the performance of a job requiring Level 2 reasoning. *See Ranstrom v. Colvin*, 622 F. App'x 688-89 (9th Cir. 2015) (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)) ("There is no appreciable difference between the ability to make simple decisions based on 'short, simple instructions' and the ability to use commonsense understanding to carry out 'detailed *but uninvolved* ... instructions,' which is what Reasoning Level 2 requires."). The court finds no error in the ALJ's determination that plaintiff is capable of performing work that exists in significant numbers in the national economy.

Plaintiff's counsel has done an outstanding job of marshaling all the evidence in the record that could support a finding of disability. But an ALJ must determine the plaintiff's RFC from all of the relevant evidence. 20 C.F.R. § 404.1545(a)(3). And under the applicable standard of review, the court must accept the factual findings of the Commissioner if they are supported by substantial evidence. 42 U.S.C. § 405(g). The ALJ

applied the correct legal standards in this case, and her factual findings are supported by substantial evidence – i.e., such evidence as a reasonable mind might accept to support her conclusion.

**IT IS THEREFORE ORDERED** this 10th day of January, 2018, that the decision of the Commissioner denying the applications is AFFIRMED.

                                        ___s/ J. Thomas Marten_____
                                        J. THOMAS MARTEN, JUDGE